```
TRACY L. WILKISON
United States Attorney
THOMAS D. COKER
Assistant United States Attorney
Chief, Tax Division
JOHN D. ELLIS (Cal. Bar No. 322922)
Assistant United States Attorney
     Federal Building, Suite 7211
     300 North Los Angeles Street
     Los Angeles, California 90012
     Telephone:  (213) 894-2740
     Facsimile:  (213) 894-0115
     E-mail:     john.ellis3@usdoj.gov

Attorneys for Plaintiff
United States of America
```

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>          v.<br><br>BEHZAD F. NIAKAN,<br><br>          Defendant. | No. 2:21-cv-6672-VAP-E<br><br>Notice of Motion and Motion for Default Judgment Against Behzad F. Niakan; Memorandum of Points and Authorities; Declarations<br><br>Hearing Date:  March 7, 2022<br>Hearing Time:  2:00 p.m.<br>Location:      Courtroom 8A, 8th Floor<br>               First Street Courthouse<br>               350 West 1st Street<br>               Los Angeles, CA 90012<br><br>Honorable Virginia A. Phillips |

PLEASE TAKE NOTICE that on the date and time listed above, or as soon thereafter as counsel can be heard, the United States of America (United States) will move for default judgment against defendant Behzad F. Niakan (Niakan) pursuant to Federal Rule of Civil Procedure 55(b).

1  The United States' motion is based on this notice, the files and records in this
2  case, the attached memorandum, and such further evidence and argument as the Court
3  permits.

4  Dated: February 1, 2022　　　　　　　　Respectfully submitted,

5  　　　　　　　　　　　　　　　　　　　TRACY L. WILKISON
   　　　　　　　　　　　　　　　　　　　United States Attorney
6  　　　　　　　　　　　　　　　　　　　THOMAS D. COKER
   　　　　　　　　　　　　　　　　　　　Assistant United States Attorney
7  　　　　　　　　　　　　　　　　　　　Chief, Tax Division

8  　　　　　　　　　　　　　　　　　　　   /s/ John D. Ellis
   　　　　　　　　　　　　　　　　　　　JOHN D. ELLIS
9  　　　　　　　　　　　　　　　　　　　Assistant United States Attorney

10 　　　　　　　　　　　　　　　　　　　Attorneys for Plaintiff
   　　　　　　　　　　　　　　　　　　　UNITED STATES OF AMERICA

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

The United States seeks to reduce to judgment $42,549 of civil penalties (FBAR penalties), late-payment penalties, and interest assessed against Niakan. The penalties resulted from Niakan's failure to timely report an Israeli financial account he held in 2013, 2014, 2015, and 2016. Although he was served with the summons and complaint more than two months ago, Niakan has not responded to the complaint, and the Clerk of the Court has entered his default. The well-pleaded facts in the complaint demonstrate that the United States is entitled to the relief it seeks. Accordingly, the Court should enter a default judgment against Niakan.

## II. STATEMENT OF FACTS

On August 18, 2021, the United States filed its complaint (ECF 1). On August 20, 2021, the Clerk of the Court issued a summons (ECF 7) relating to the complaint. On November 15, 2021, the United States served the summons and complaint on Niakan by personal delivery. The United States filed a proof of service (ECF 9) relating to Niakan on November 16, 2021. On December 14, 2021, Niakan and the United States filed a stipulation (ECF 10) extending Niakan's time to answer the complaint until January 5, 2021. However, Niakan, has not yet responded to the complaint. The Clerk of the Court accordingly entered his default (ECF 11) on January 11, 2022.

Having defaulted, Niakan is deemed to have admitted the well-pleaded factual allegations in the complaint. *E.g., Jules Jordan Video, Inc. v. 144942 Canada Inc.*, 617 F.3d 1146, 1159 (9th Cir. 2010); Fed. R. Civ. P. 8(b)(6). Those facts are as follows. Niakan is a United States citizen. (Compl., ECF 1, ¶ 14). During 2013, 2014, 2015, and 2016, Niakan had a financial interest in, signature authority over, and/or otherwise controlled a financial account at Mizrahi-Tefahot Bank, Ltd. (Mizrahi-Tefahot), a bank in Israel. (*Id*. ¶ 15). During each of the 2013, 2014, 2015, and 2016 calendar years, Niakan's Mizrahi-Tefahot account held more than $10,000. (*Id*. ¶ 16).

As a United States citizen, Niakan was required to file with the IRS a FinCEN Form 114, Report of Bank and Financial Accounts (FBAR), disclosing his interest in the the Mizrah-Tefahot account for each of the 2013, 2014, 2015, and 2016 calendar years. Niakan, however, failed to file a timely FBAR for the 2013, 2014, 2015, or 2016 calendar years. (Compl., ECF 1, ¶ 18). On November 7, 2019, the IRS assessed a $9,515 FBAR penalty for each of the 2013, 2014, 2015, and 2016 years, for a total penalty of $38,060. (*Id.*, ¶ 19; Declaration of Nancy Beasley (Beasley Decl.) ¶ 4, Ex. 1). Each FBAR penalty related to Niakan's undisclosed Mizrahi-Tefahot account. (*Id.*) On November 19, 2019, the IRS sent Niakan a letter demanding that he pay the FBAR penalty assessments. (*Id.*, ¶ 20; Beasley Decl. ¶ 5, Ex. 2). However, the penalties have not been paid, and the unpaid balance owed by Niakan, including late-payment penalties and interest computed to July 26, 2021, is $42,549. (*Id.* ¶¶ 21; Beasley Decl. ¶ 6, Ex. 3).

### III. ARGUMENT

#### A. The United States has met the procedural requirements for entry of default judgment against Niakan under Local Rule 55-1

Federal Rule of Civil Procedure 55(b) authorizes the Court to enter a default judgment against a party that has defaulted. Entry of a default judgment is appropriate where "the adversary process has been halted because of an essentially unresponsive party." *H.F. Livermore v. Aktiengesellschaft Gebruder Loepfe*, 432 F.2d 689, 691 (D.C. Cir. 1970). Local Rule 55-1 requires that the movant support its application with a declaration stating (1) "when and against which party default was entered"; (2) "the pleading to which default was entered"; (3) whether the defaulting party is a minor, incompetent person, or active service member; and (4) that the defaulting party was properly served with notice. Attached is a declaration indicating that (1) Niakan was served with the complaint on November 15, 2021; (2) Niakan has not answered or otherwise responded to the complaint; (3) the Clerk of the Court entered Niakan's default on January 11, 2022; and (4) Nikan is not an infant, incompetent, or member of the armed services. (Declaration of John D. Ellis ¶¶ 4, 7-9, Ex. 1).

### B. Default judgment should be entered against Niakan

The seven factors enumerated in *Eitel v. McCool*, 782 F.2d 1470 (9th Cir. 1986), determine whether the Court should enter a default judgment against a non-responsive defendant. Those factors are:

(1) the possibility of prejudice to plaintiff;

(2) the merits of plaintiff's substantive claim;

(3) the sufficiency of the complaint;

(4) the amount of money at stake in the action;

(5) the possibility of a dispute concerning material facts;

(6) whether the defendant's default was due to excusable neglect; and

(7) the Federal Rules of Civil Procedure's strong policy favoring decisions on the merits.

*Eitel*, 782 F.2d at 1471-72.

#### 1. The United States will be prejudiced if the Court does not enter default judgment

The first *Eitel* factor is whether plaintiff will be prejudiced if the Court does not enter a default judgment. *Eitel*, 782 F.2d at 1471. A plaintiff is prejudiced if it would have no recourse for recovery without the requested judgment. *See Wecosign, Inc. v. IFG Holdings, Inc.*, 845 F. Supp. 2d 1072, 1081 (C.D. Cal. 2012); *Philip Morris USA, Inc., v. Castworld Prods., Inc.,* 219 F.R.D. 494, 499 (C.D. Cal. 2003).

Here, the United States seeks to reduce to judgment $42,549 of FBAR penalties, plus late-payment penalties and interest, assessed against Niakan. If the relief sought in the complaint is not granted, the United States would be without a remedy for the harm caused by Niakan's failure to timely pay the penalties. Niakan's failure to answer the complaint or defend this action should not prevent the United States from obtaining this judgment and protecting the public fisc. Moreover, Niakan's failure to respond should not require the United States to expend more of its finite resources. This factor favors the entry of a default judgment.

## 2. and 3. This suit is righteous and supported by a well-pleaded complaint

The second and third *Eitel* factors "assess the substantive merit of plaintiff's claim and the sufficiency of its pleadings." *Landstar Ranger, Inc. v. Parth Enters.*, 725 F. Supp. 2d 916, 920 (C.D. Cal. 2010). These two factors overlap and work in unison; as such, they are considered together. *See PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1175 (C.D. Cal.).

### a. *The complaint states meritorious and sufficient claims to reduce the FBAR penalty assessments to judgment*

The Currency and Foreign Transactions Reporting Act, also known as the Bank Secrecy Act (BSA), 31 U.S.C. § 5311-25, was enacted in 1970. Pub. L. 91-508, 84 Stat. 1114. The BSA, as relevant here, imposed on U.S. persons a number of reporting requirements intended to have "a high degree of usefulness in criminal, tax, or regulatory investigations or proceedings." 31 U.S.C. § 5311; *see also California Bankers Ass'n v. Shultz*, 416 U.S. 21, 26 (1974). The BSA requires U.S. citizens to report to the Secretary of the Treasury any relationship with foreign financial accounts with balances in excess of $10,000. 31 U.S.C. § 5314; 31 C.F.R. §§ 1010.306 and 1010.350. Covered relationships include "having a financial interest in[] or signature authority over" a foreign bank account. 31 C.F.R. § 1010.350. The relationships must be disclosed on a reporting form prescribed by the Treasury Department. 31 C.F.R. § 1010.350(a). For the years in suit, the prescribed form was FinCEN Form 114, Report of Foreign Bank and Financial Accounts. This form is commonly called an FBAR. An FBAR is an information report (no tax is due with its filing) that must be filed no later than June 30 of the year following the calendar year during which the account was held.[1] 31 C.F.R. § 1010.306(c); *United States v. Williams*, 489 Fed. Appx. 665 (4th Cir. 2012).

---

[1] FBARs for the 2016 calendar year were due by April 15, 2017, but the deadline could be extended for a maximum of six months, until October 15, 2017. Surface Transportation and Veterans Health Care Choice Improvement Act of 2015, Pub. L. No. 114-41, § 2006(b)(11), 129 Stat. 443 at 458.

4

The IRS is authorized to assess a civil penalty (FBAR penalty) against individuals who violate the FBAR reporting requirements. *See* 31 U.S.C. §§ 5314 and 5321. The penalty comes in two varieties. A penalty for a non-willful FBAR violation cannot exceed $10,000.[2] 31 U.S.C. § 5321(a)(5)(B). A penalty for a willful FBAR violation, however, can be the greater $100,000 or 50% of the balance in the account at the time of the violation. 31 U.S.C. § 5321(a)(5)(C)-(D).

Here, the IRS assessed a non-willful FBAR penalty relating to a Mizrahi-Tefahot account that Niakan held but failed to timely disclose in 2013, 2014, 2015, and 2016. The account contained at least $10,000 during those years. As such, Niakan was required to file an FBAR reporting the account for each of the 2013, 2014, 2015, and 2016 calendar years. The FBARs were due by June 30, 2014, June 30, 2015, June 30, 2016, and October 15, 2017, respectively. *See* 31 C.F.R. § 1010.306(d). Niakan, however, did not file timely FBARs for any of the subject years. The IRS was therefore authorized to assess an FBAR penalty with respect to each year. The IRS eventually assessed one penalty of $9,515 for each of the 2013, 2014, 2015, and 2016 calendar years. No penalty exceeded the limit imposed by 31 U.S.C. § 5321(a)(5)(B).

            b.    *The assessments and complaint were timely*

An FBAR penalty must be assessed (recorded) six years after the date of the violation to which it relates. *See* 31 U.S.C. § 5321(b)(1). The date of the violation is the due date of the relevant FBAR form. *See* 31 C.F.R. § 1010.306(c). In this case, Niakan's FBARs for the 2013, 2014, and 2015 calendar years were due on June 30, 2014, June 30, 2015, and June 30, 2016. Niakan's FBAR for the 2016 calendar year was due on October 15, 2017. Each FBAR penalty at issue in this case was assessed on November 7, 2019. As such, each penalty was assessed within six years of the relevant violation.

---

[2] This amount is periodically adjusted for inflation. For 2015 and 2016 tax years, a non-willful FBAR penalty could not exceed $12,921. *See* 31 C.F.R. § 1010.821; 83 Fed. Reg. 11878-01 (March 19, 2018).

5

The complaint was also timely. A suit to reduce an FBAR penalty to judgment must be commenced within two years from the date the penalty is assessed. 31 U.S.C. § 5321(b)(2). Because the FBAR penalties were assessed on November 7, 2019, the United States was required to file its complaint no later than November 7, 2021. The complaint, filed on August 18, 2021, preceded this date.

In short, the United States' complaint demonstrates that it is entitled to the relief it seeks. The second and third *Eitel* factors support an entry of default judgment.

### 4. Any recovery will be proportional to the harm caused by Niakan's failure to report his foreign financial account

The fourth *Eitel* factor requires the Court to "assess whether the recovery sought is proportional to the harm caused by defendant's conduct." *Landstar Ranger, Inc. v. Parth Enterprises, Inc.*, 725 F. Supp. 2d 916, 921 (C.D. Cal. 2010). On at least four occasions, Niakan violated the FBAR reporting requirements by failing to disclose his Israeli bank account that had a balance in excess of $10,000, causing the IRS to expend resources investigating the violation. The BSA authorizes the IRS to assess a $10,000 penalty with respect to each violation of the reporting requirements. The IRS, in its discretion, imposed FBAR penalties that were less than the maximums set by Congress. As such, they were proportional to the harm caused by his failure to report the subject account.

### 5. Disputed facts do not preclude entry of default judgment

"The fifth *Eitel* factor examines the likelihood of disputes between the parties regarding the material facts surrounding the case." *Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1060 (N.D. Cal. 2010). Upon entry of default, all facts pleaded in the complaint are taken as true, except those relating to the amount of damages. *See Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977); *see also NewGen, LLC v. Safe Cig LLC*, 840 F.3d 606, 617 (9th Cir. 2016). Accordingly, "[w]here a plaintiff has filed a well-pleaded complaint, the possibility of a dispute concerning material facts is remote." *Wecosign*, 845 F. Supp. 2d at 1082.

As described above, the United States filed a well-pleaded complaint that details Niakan's unpaid FBAR penalties. Niakan's default means that the United States' allegations are accepted as true. Accordingly, this factor weighs in favor of entry of default judgment.

### 6. Excusable neglect does not prevent entry of default judgment

The sixth *Eitel* factor examines whether the default at issue could be attributed to excusable neglect. *Eitel*, 782 F.2d at 1472. It is well settled that no excusable neglect defense is available to properly served defendants who ignore notices and deadlines. *See NewGen,* 840 F.3d at 616; *see also Landstar Ranger*, 725 F. Supp. 2d at 922. Here, Niakan was personally served with the summons and complaint by personal delivery on November 15, 2021. Despite this notice, he has not timely responded to the complaint. This factor favors entering a default judgment against Niakan.

### 7. The presumption in favor of judgments on the merits does not prevent entry of default judgment

The final *Eitel* factor is the Federal Rules of Civil Procedure's strong preference for decisions on the merits. *Eitel*, 782 F.2d at 1472. However, when a defendant fails to respond to a complaint, "a decision on the merits becomes impossible*.*" *Wecosign*, 845 F. Supp. 2d at 1083. Further, "the mere existence of Fed. R. Civ. P. 55(b) indicates that this preference, standing alone, is not dispositive." *PepsiCo*, 238 F. Supp. 2d at 1177 (internal quotations omitted). Niakan's failure to answer the complaint should not prevent the United States from reducing its FBAR penalties to judgment.

**C. Niakan's FBAR penalty liabilities should be reduced to judgment**

Attached to this motion are IRS Forms 13448, Penalty Assessment Certification, relating to the FBAR penalties assessed against Niakan. (Declaration of Nancy Beasley (Beasley Decl.) ¶ 4, Ex. 1). These forms, which are equivalent to IRS Forms 4340, "establish[] a *prima facie* case for the United States." *See United States v. Jones*, 33 F.3d 1137, 1139 (9th Cir. 1994). Despite notice and demand for payment of these liabilities, Niakan has not paid the amounts due. (Beasley Decl. ¶ 6, Ex. 3). As of July

26, 2021, the balance due from Niakan for the subject penalties, including late-payment penalties and interest, is $42,549. (*Id.*). Niakan has not appeared to dispute the FBAR penalties. Accordingly, this Court should reduce to judgment the FBAR penalties, plus interest and penalties, concurrent with its entry of default here.

## IV. CONCLUSION

The Court should grant the United States' motion for default judgment against Niakan and enter a judgment against him for his unpaid FBAR penalties, late-payment penalties, and interest in the amount of $42,549.

Dated: February 1, 2022

Respectfully submitted,

TRACY L. WILKISON
United States Attorney
THOMAS D. COKER
Assistant United States Attorney
Chief, Tax Division

   /s/  John D. Ellis
JOHN D. ELLIS
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

8

**PROOF OF SERVICE BY MAILING**

I am over the age of 18 and not a party to the within action. I am employed by the Office of the United States Attorney, Central District of California. My business address is 300 North Los Angeles Street, Suite 7211, Los Angeles, California 90012.

On **February 2, 2022,** I served

**NOTICE OF MOTION AND MOTION FOR DEFAULT JUDGMENT AGAINST BEHZAD F. NIAKAN; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS**

on each person or entity name below by enclosing a copy in an envelope addressed as shown below and placing the envelope for collection and mailing on the date and at the place shown below following our ordinary office practices. I am readily familiar with the practice of this office for collection and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service in a sealed envelope with postage fully prepaid. Date of mailing: **February 2, 2022**

Place of mailing: Los Angeles, California

**See attached list**

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on: **February 1, 2022,** Los Angeles, California.

                                                        /s/ Nancy Pavon

                                                        **Nancy Pavon**

1
2  **RE: UNITED STATES OF AMERICA V. BEHZAD F. NIAKAN**
3  **CASE NO.: 2:21-cv-06672-VAP-E**
4
5  <u>**Service List**</u>
6
7  **Behzad F. Niakan**
   **[redacted per L.R. 5.2-1]**
8  **Los Angeles, CA [redacted per L.R. 5.2-1]**
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28